**STATE of Missouri, Respondent,**

v.

**Gary Lee HEATHER, Appellant.**

No. 34528.

Missouri Court of Appeals,
St. Louis District, Division Two.

July 31, 1973.

Patrick Horner, Auxvasse, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Thomas I. Osborne, Pros. Atty., Mexico, for respondent.

SIMEONE, Judge.

This is an appeal by appellant, Gary Lee Heather, from a judgment of conviction in the Circuit Court of Audrain County for tampering with a motor vehicle without the consent of the owner. § 560.175(1).[1] Appellant was found guilty by a jury and sentenced by the court to serve three years in the custody of the Department of Corrections.

Appellant was charged by an amended information with the offense of tampering with a 1962 Chevrolet four-door sedan, the property of Mr. J. W. McCluggage. The amended information charged a prior conviction. § 556.280.

On April 21, 1971, J. W. McCluggage, a resident of Laddonia, Missouri, located in Audrain County, owned a 1962 Bel Air Chevrolet, four-door sedan. On that day McCluggage went to the Mexico Bowling Lanes; he returned to Laddonia at about 9:30 p. m. and went to a tavern. He parked his car near the tavern, and returned to his automobile at about midnight. It would not start. When he lifted the hood of the vehicle, the air breather was lying on the manifold and the "distributor cap was gone and the coil wire and rotor [were missing]."

On the same day, prior to the time that McCluggage became aware that the parts of his motor were missing, Trooper Gary Phillips, a member of the Missouri Highway Patrol, was on duty patrolling the highways. He was in uniform and in a marked patrol car. Near the corner of Chestnut and Main in Laddonia he observed two men come around the corner; "when they looked up and saw me, they turned around and went back in the other direction." The trooper became suspicious of the two men who "had [run] when they saw me" and he circled the block a couple of times trying to find them. He saw a 1960 Chevrolet parked on Chestnut; he had the license checked and determined

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

that the vehicle was registered in the name of Gary Heather. As he continued cruising, he noticed the two men working on the 1960 Chevrolet. When he got to a place where he intended to watch, the men who "had been under the hood were gone." Phillips later saw the defendant with another trooper, Raymond Magruder, who had apprehended appellant. Trooper Magruder had received a call to go to Laddonia about midnight to participate in an investigation of some other matter. Between Third and Fourth Streets Magruder heard something in the bushes and "advised them [the two men] to come out with their hands up two or three times . . . and after about the third time they both went out the opposite side from which I was on and ran away from me." He pursued and advised the men to halt. "Mr. Heather stopped." Magruder advised him he was under arrest and gave him the Miranda warnings from a card he carried with him. Magruder then turned appellant over to Trooper Phillips.

Phillips talked with McCluggage about the missing parts of his car; with Heather's permission he looked under the hood of the 1960 Chevrolet. He found a broken piece of a distributor cap on the block, a distributor cap in its proper location, and a coil wire and rotor. He placed his initials and the date on the parts, held them overnight, and then turned them in to the evidence technician at Troop F. On September 21, 1971, Trooper Phillips picked up these exhibits and brought them to Audrain County for the preliminary hearing. Since that date, the parts used as the state's exhibits were kept in the prosecutor's office; from there they were brought to court on the morning of the trial, November 30, 1971.

Magruder turned Heather over to Phillips; Heather was then taken to the Audrain County Jail and Phillips read appellant a "statement of rights and waiver of rights." After Phillips read the statement to Heather, he questioned the appellant and appellant signed a statement. Trooper

Phillips testified that he made no threats or promises to have him sign the waiver or statement. At the time of appellant's arrest and at the time he signed the waiver and gave the statement, appellant's "face was flushed, his eyes were bloodshot, he had a strong odor of alcoholic beverage on his breath," his speech was "slurred," and he was unsteady in his walk. Both Phillips and Magruder were of the opinion that he was intoxicated, but he gave "intelligent answers" to Phillips' questions; the answers "did match up with the questions" that were asked.

At the beginning of the trial and during the opening statement, the prosecutor said the following: "The defendant, later that evening, shortly after he was advised of his rights at the Jail, I believe is the location—he signed a statement saying that—" Defense counsel objected to any statement that may have been made and urged that if the state intended to introduce such a statement, a voir dire hearing be held on its admissibility. Defense counsel objected to any reference to the statement before the jury; he requested that the jury be instructed to disregard the reference and also requested a mistrial. The court instructed the jury to disregard the reference made by the prosecuting attorney as to any statement that may have been made by the defendant, but denied the request for a mistrial.

The defendant offered no evidence. Instructions were given, the jury found the defendant guilty, the motion for new trial was overruled, allocution was granted, and defendant's sentence was imposed.

Appellant raises three points on appeal. The appellant contends that the court erred for the following reasons: (1) in not declaring a mistrial during the opening statement when the prosecutor made reference to the statement by the defendant, thus violating his right to have the issue of voluntariness of the statement ruled on by the court prior to the jury becoming aware of it; (2) in admitting the waiver and statement made by appellant, over objection, be-

cause the evidence establishes that at the time the waiver and statement were given, the appellant was intoxicated "to such an extent that he was incapable of realizing . . . the import or consequences of his acts and words," or of understanding his rights or voluntarily, intelligently and knowingly waiving his Miranda rights; and (3) in admitting into evidence the automotive parts because the state failed to show a proper chain of custody of possession from the time of the alleged offense to the date of trial.

Respondent, on the other hand, argues that: (1) the trial court did not abuse its discretion in denying appellant's request for a mistrial; (2) the trial court properly admitted the waiver and statement into evidence because the testimony adduced outside the hearing of the jury supported the conclusion that the waiver and statement were voluntarily made, notwithstanding the appellant's claim of incapacity by reason of intoxication; and (3) the trial court properly admitted the automotive parts into evidence because the testimony produced by the state established reasonable assurance that the evidence presented was the same and in the same condition as when initially seized.

Appellant first contends that the court should have declared a mistrial because the minds of the jurors had been "poisoned" by the mention of the fact that defendant had made a statement, and the admonition to disregard the remark did not remove the fact from their minds. It is contended that the statement was already before the jury before a voir dire hearing on the voluntariness of the statement was held so that the jury was incapable of affording the defendant a fair and impartial trial, hence the request for mistrial should have been sustained.

■■ The declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way, State v. Raspberry, 452 S.W.2d

169, 173 (Mo.1970), or where the incident is so grievous that the prejudicial effect can be removed in no other way, State v. Camper, 391 S.W.2d 926, 928 (Mo.1965). For these reasons, whether the remarks of counsel require a mistrial and the discharge of the jury rest largely in the discretion of the trial court which has observed the incident giving rise to the request for mistrial and is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial. State v. Camper, *supra* at 928; State v. Tate, 468 S.W.2d 646, 650 (Mo.1971). Our function is to determine whether, as a matter of law, the trial court abused its discretion to the prejudice of the appellant in refusing to declare a mistrial. State v. Chester, 445 S.W.2d 393, 399 (Mo.App. 1969). When an improper incident occurs during trial and the jury is instructed to disregard it, ". . . the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court." State v. Dennison, 428 S.W.2d 573, 577 (Mo.1968).

■ We cannot conclude from the entire record that the trial court abused its discretion in overruling the request for mistrial because of the reference to the statement by the prosecutor. The court sustained the objection to the reference and instructed the jury to disregard the statement. The prosecutor did not reveal the contents of the appellant's statement; a hearing on the voluntariness was later held and the court submitted the issue of voluntariness to the jury in Instruction No. 4 and the jury found the statement to be voluntary.

Appellant relies on a number of decisions which hold that if the defendant requests a preliminary hearing on the question of whether a statement is voluntary, it is error not to grant the request. State v.

Holliday, 353 Mo. 397, 182 S.W.2d 553 (1944); State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 230 (1948); State v. Bellew, 282 S.W.2d 536 (Mo.1955). But this principle is not applicable under the record here. The remark of the prosecutor did not deprive appellant of his right to a hearing before the court prior to the submission of the issue of voluntariness to the jury. A hearing was held by the court and then the issue of voluntariness was submitted to the jury. In this posture, the principle relied upon is inapplicable.

Appellant next contends that the court erred in admitting the statement into evidence because he was intoxicated to such an extent at the time he gave the statement and waived his rights that he could not voluntarily make the statement or waive his "Miranda" rights. At the time of waiving his rights and giving the statement his walk was "unsteady," his speech was slurred ("but you could understand every word he said—just at times his tongue seemed a little thick"), his face was flushed, his eyes bloodshot and he had a strong odor of alcohol on his breath. The officers testified that in their opinion appellant was intoxicated. So appellant contends he was "incapable of forming a rational decision to make the statement, with full knowledge of his rights under the law," and "incapable of knowingly and intelligently waiving his constitutional rights."

■ Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that the waiver of constitutional rights must be given voluntarily, knowingly and intelligently. The decision further specifies that the burden is on the state to demonstrate that the accused knowingly and voluntarily waived his privilege against self-incrimination and his right to counsel. But the state is not required to negative every possible circumstance which presents an issue of fact as to the voluntariness of the statement or confession. State v. Nolan, 423 S.W.2d 815, 818 (Mo. 1968).

Appellant relies on several civil cases to the effect that intoxicants impair judgment and "beget" a spirit of recklessness. But the precise issue presented in this case is whether alcoholic intoxication resulting from one's voluntary intake precludes the admission of a statement because the person may not have voluntarily and knowingly waived his rights or made the statement.

■ The general principle upon which courts are agreed is that intoxication at the time of making a statement or confession does not, at least where the intoxication, in the words of some cases, does not amount to mania, require that the statement be excluded because it is involuntary or not made knowingly and intelligently. Rather, the fact of intoxication goes to the weight and credibility to be accorded the statement. See cases collected in Annot., 69 A.L.R.2d 361 (1960); State v. Rose, 249 S.W.2d 324 (Mo. banc 1952).

Intoxication is a factor to be considered, but is not determinative of the voluntariness of waiver of rights issues. The standard is whether the statement is reliable and whether there is such a lack of awareness or understanding so that in the rare case where it clearly appears, the defendant was so intoxicated so as to be "unable to appreciate the nature and consequences of his statements." People v. Schompert, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 519, 226 N.E.2d 305, 308 (1967).

■ If the intoxication is so extreme that the court is compelled to conclude that the statement was not the product of a rational intellect and a free will, the statement is not admissible and its reception in evidence would constitute a deprivation of due process. Gladden v. Unsworth, 396 F. 2d 373, 380–381 (9th Cir. 1968).

In United States v. Martin, 434 F.2d 275 (5th Cir. 1970), police officers testified that the defendant was bleary-eyed, smelled of alcohol, appeared to have been in a dazed condition from having been drinking. The officers stated that in spite of

his condition of intoxication, the defendant appeared coherent and responded to their questions intelligently. The court found that while defendant had been drinking and was affected by alcohol, his faculties were not so impaired that he could not understand, and concluded that the defendant validly waived his constitutional rights as specified in Miranda v. Arizona, *supra*.

In State v. Smith, 342 S.W.2d 940, 941–942 (Mo.1961), our Supreme Court held that a confession is not inadmissible because the defendant was intoxicated. The rule governing confessions or statements in a situation where the defendant is under the influence of intoxicants is as follows: " 'The fact that accused was more or less intoxicated when he confessed does not exclude the confession if he had sufficient mental capacity to know what he was saying . . . However, the fact of intoxication may be considered by the jury as lessening the weight of the confession; and confessions by one who was so drunk that he did not understand what he was saying are not competent.' " State v. Smith, *supra* 941–942. See also State v. Thresher, 350 S.W.2d 1, 8 (Mo.1961).

■ While there is evidence in the record that appellant manifested signs of intoxication and was believed to be intoxicated by the officers, this did not preclude a finding that the statement was voluntary or that the defendant lacked the capacity to understand and know what he was saying, or that he lacked the capacity to waive his Miranda rights. Trooper Phillips testified that appellant's speech was "somewhat slurred but you could understand every word he said—just at times his tongue seemed a little thick." He testified that appellant knew where he was at the time he executed the waiver, and he understood the questions asked him. He made intelligent answers to the trooper's questions and his answers matched up with the questions that were asked. No promises or threats were made to induce appellant to sign the waiver, and appellant responded that he understood his rights.

■ The jury was instructed on the voluntariness of the statement; the jurors were also instructed that if they found defendant was intoxicated to such an extent that he did not know what he was saying or did not comprehend the meaning of the warnings given to him, then they were to find that the statement was involuntary and should be disregarded. The instruction was proper.

■ Under the circumstances reflected in the record, we conclude that the appellant had sufficient capacity to waive his Miranda rights and to make a voluntary statement. The trial court did not err in admitting the waiver and statement.

The appellant's final contention is that the court erred in admitting the automotive parts into evidence because an unbroken chain of possession was not shown since the time of the offense to the time of trial. Trooper Phillips, during his testimony, identified state's exhibit no. 6 as the distributor cap which he removed from its correct position in the vehicle owned by the appellant. He identified state's exhibit no. 7 as the coil wire taken from under the hood of the Heather vehicle, state's exhibit no. 8 as a portion of broken distributor cap found on the engine of the same automobile, and state's exhibit no. 9 as a portion of the distributor cap found in the same place. Phillips recorded his initials and the date on all four exhibits and held them overnight in his patrol car until they were turned over to the evidence technician of Troop F of the Missouri State Highway Patrol the following morning. Sergeant Roy A. Fluegel, the evidence technician, stated that he received the exhibits from Phillips and entered his own initials and date upon them and affixed a tag to them for purposes of identification. The items were stored in the evidence locker in Jefferson City until September 21, 1971, when Fluegel released them to Phillips. Fluegel further stated that he did not alter or change the exhibits in any way. Phillips testified that Fluegel removed the exhibits from the Troop F evidence locker in Jef-

ferson City on September 21, 1971, and gave them to him for the purpose of presenting them at the preliminary hearing in the Audrain County Courthouse. After the hearing the exhibits were locked in the drawer of a filing cabinet in the prosecutor's office which was located in the courthouse. Phillips placed the exhibits in the cabinet himself and removed them on the morning of the trial. Phillips stated that the prosecutor's secretary retained the key to the cabinet and admitted that he had not been around the evidence at all times during the interim between the preliminary hearing and the trial. Phillips, however, did testify that the exhibits appeared to be exactly the same pieces he had seized from the automobile of appellant.

To establish a chain of custody the evidence must afford reasonable assurance that the exhibit was the same at trial as it was when first obtained. State v. McCrary, 478 S.W.2d 349, 351 (Mo.1972). The state is not required to account for hand to hand custody of the evidence between the time it is obtained and the time it is admitted into evidence, nor need it be continually watched to establish a chain of possession. State v. Rose, 428 S.W.2d 737 (Mo.1968); State v. Watson, 386 S.W.2d 24 (Mo.1964), app. dis. at 381 U.S. 275, 85 S.Ct. 1458, 14 L.Ed.2d 431 (1965). "The evidence need not exclude every possibility that something in the interim of police possession disturbed or interfered with the exhibit. It is sufficient if the evidence shows reasonable assurance that it was the same and in the same condition." State v. Baines, 394 S.W.2d 312, 316 (Mo.1965), U.S. cert. den. at 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008 (1966).

Trooper Phillips, after taking the parts, initialed them and they were turned over to the evidence technician. They were stored in Jefferson City until the preliminary hearing when Phillips took them to Audrain County. They were placed in a drawer in the prosecutor's office where Phillips picked them up for trial. At trial Phillips identified the parts as the "exact same pieces" that he picked up. The evidence constituted reasonable assurance that the evidence was the same as when it was first obtained and sufficient to show a chain of custody.

The judgment of conviction is affirmed.

SMITH, P. J., and KELLY and GUNN, JJ., concur.