**STATE of Missouri, Respondent,**

v.

**Merle Clay WISDOM, Appellant.**

**No. 36670.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 29, 1976.

Motion for Rehearing or Transfer
Denied Aug. 18, 1976.

Charles D. Kitchin, Public Defender, Neal P. Murphy, James C. Jones, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for respondent.

RENDLEN, Judge.

Merle Clay Wisdom appeals his conviction of murder in the first degree, § 559.010 RSMo 1969, V.A.M.S., and sentence of life imprisonment, contending the trial court erred: (1) by overruling his motion to suppress a confession and failing to find with unmistakable clarity it was voluntarily made; (2) by admitting the confession in view of evidence that appellant was intoxicated and incapable of intelligent waiver of his rights; and (3) by admitting photographic evidence depicting the body of the victim. Sufficiency of the evidence is not challenged.

On August 11, 1974, Stella Hammond, the victim's mother, was living with appellant (nicknamed Bud) on West Quincy in the City of St. Louis. Their three-room house included a living room, bedroom and a kitchen reached from the front of the house through the bedroom. At approximately 4 p. m. that day, as Mrs. Hammond and appellant sat watching television, Leroy Hammond came to the house and Mrs. Hammond prepared lunch which he ate in the kitchen. Appellant left the house and returned a few minutes later stating that he had had a drink. He watched television briefly then went to the kitchen where Mrs. Hammond heard her son cry out, "Bud, no Bud," followed by the sound of two shots. She ran to the kitchen and saw her son lying back in his chair while appellant stood six or eight feet distant holding a gun usually kept in the bedroom. Appellant put the gun in his pocket and left, whereupon Mrs. Hammond summoned the police.

Arrested in a bar in St. Louis County approximately thirty minutes after the shooting, appellant was delivered at 8:30 that evening to the custody of the City Police to whom he admitted the killing, having first been advised of his rights. Approximately one-half hour later at City Police Headquarters, appellant again was advised of his rights and made a detailed statement of the crime. Appellant claims to have been intoxicated when making the confessions and moved for their suppression at trial. The court on full hearing overruled the motion. Initial review of the transcript disclosed the findings and order of the trial court failed to show with unmistakable clarity the confessions were voluntary as required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908

(1964); and *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). Accordingly, we ordered the trial court to conduct further hearing and make express findings on the issue of voluntariness of the confessions, *State v. Bridges*, 491 S.W.2d 543, 545[2] (Mo.1973); *State v. Glenn*, 429 S.W.2d 225, 237[29, 30] (Mo.banc 1968). The hearing was held with appellant and counsel for the defense and the State present. Arguments were heard but no new evidence offered. The court found the confessions had been made voluntarily and "with complete understanding of the nature and consequences of the statements," rendering moot appellant's first contention of error.

We now turn to the question of whether appellant was intoxicated so as to render him incapable of a voluntary and rational waiver of his rights.

▮ It is generally agreed that intoxication at the time of making a statement or confession which is less than "mania" does not "require that the statement be excluded because it is involuntary or not made knowingly and intelligently. Rather, the fact of intoxication goes to the weight and credibility to be accorded the statement." *State v. Heather*, 498 S.W.2d 300, 304[5] (Mo.App. 1973). It was noted in *Heather, supra* at 305, that the trial court "found that while defendant had been drinking and was affected by alcohol, his faculties were not so impaired that he could not understand, and concluded that the defendant validly waived his constitutional rights as specified in *Miranda v. Arizona*." [1] While the burden is on the State to demonstrate the accused knowingly and voluntarily waived his privilege against self-incrimination and right to counsel, this burden does not require the State to negative every possible circumstance which might raise an issue of fact as to the voluntariness of the statement or confession. "The standard is whether the statement is reliable and whether there is such a lack of awareness or understanding so that in the rare case where it clearly appears, the defendant was so intoxicated so as to be 'unable to appreciate the nature and consequences of his statements.' " *Heather, supra* at 304. In such case the defendant would be incapable of knowingly and intelligently waiving his constitutional rights.

Our Supreme Court has stated: "The fact that accused was more or less intoxicated when he confessed does not exclude the confession if he had sufficient mental capacity to know what he was saying . . . However, the fact of intoxication may be considered by the jury as lessening the weight of the confession." *State v. Smith*, 342 S.W.2d 940, 941–2[3] (Mo.1961).

Three police officers testified at the hearing on the motion to suppress. The first, a county police officer who arrested appellant at 5:30 p. m., one-half hour after the shooting, in a St. Louis County bar explained that appellant was advised of his "Miranda" rights and indicated he understood them. He stated that while appellant had a drink before him when arrested, the officer did not notice the smell of alcohol on his breath. Appellant staggered when he walked but this difficulty apparently stemmed from a physical disability. There was no indication that appellant did not understand the questions asked though he repeated several times that he was under medication. The officer stated that if he had stopped appellant on the highway he would not have arrested him for drunken driving.

The next to testify was the city police officer who took appellant to City Police Headquarters at about 8:30 p. m. He too advised appellant of his rights and appellant admitted the shooting. This officer, also present at the 5:30 p. m. arrest, did not detect the smell of alcohol but noticed appellant's difficulty walking. In his opinion appellant was not under the influence of alcohol.

A third officer testified he had taken appellant's statement at City Police Headquarters at 9 p. m. after appellant had again been informed of his rights and that appellant's speech was clear and concise.

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant testified he had between five and ten "boilermakers" at the tavern and had taken some diabetic medicine. Though he remembered being arrested and advised of his rights, he did not remember making any of the statements attributed to him or any of the later interrogation.

 Aside from appellant's self-serving statements the overwhelming weight of the evidence supports the trial court's finding that appellant knowingly and intelligently waived his rights by voluntarily making a full statement. While appellant may have consumed some intoxicants, he demonstrated an ability to understand and answer questions and rationally waive his right to remain silent. The court did not err admitting appellant's statements into evidence.

The final contention of error concerns admission of a black and white photograph taken at the morgue showing the upper portion of deceased's body and location of the wound. It is clear that "admission of a photograph of the body of the deceased in a homicide prosecution rests within the sound discretion of the trial court." *State v. Stevens*, 467 S.W.2d 10, 24[16] (Mo.1971), cert. den. 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971); *State v. Brown*, 524 S.W.2d 188, 190[7] (Mo.App. 1975); *State v. Wintjen*, 522 S.W.2d 628, 630[4] (Mo.App.1975).

> It has generally been held that even though a photograph may be inflammatory it is admissible if it tends to prove any material element of the State's case; this includes the issues of identity, condition and location of the body, nature or location of wounds, and the cause of death; and, generally, if the photograph corroborates the oral testimony of the state or refutes defense testimony it is admissible. (citing cases) And a photo is not made inadmissible because the oral testimony may have described what is shown in the photo . . . if the photo is relevant, it is not excluded because it may be inflammatory, unless the situation is so unusual that the extent of prejudice overrides the relevancy and probative value

of the photo. *State v. Jackson*, 499 S.W.2d 467, 472[6–8] (Mo.1973).

The picture was relevant to the identity issue, the nature and location of wounds, and the cause of death. We find no abuse of discretion. The judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.