In the Interest of J. L. P., a minor.

No. 41329.

Missouri Court of Appeals,
Eastern District,
Division One.

March 11, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

As Corrected June 24, 1980.

Application to Transfer Denied
July 15, 1980.

Judith B. Sklar, St. Charles, for appellant.

William J. Hannah, Pros. Atty., James J. Redmond, Asst. Pros. Atty., St. Charles, for respondent.

WEIER, Judge.

This is an appeal from a judgment of the Juvenile Division of the St. Charles County Circuit Court finding J.L.P., then a fifteen year old juvenile, was in need of care and treatment under the Juvenile Code by virtue of stealing from his adoptive father.[1] The trial court first determined the youth had committed the offense and after a later dispositional hearing, appellant was committed to the custody of the Division of Youth Services. We affirm the adjudication and the disposition of the youth by the court.

The appellant first contends the trial court erred in overruling a motion to

---

1. Presently stealing is a violation of § 570.030 (RSMo.1978); at the time of the offense, it was prohibited by § 560.156 (RSMo.1969).

suppress a confession made by the juvenile because there was not a knowing and intelligent waiver of his *Miranda*[2] rights. The trial court heard testimony presented by both the State and the appellant on the issue of voluntary waiver. A detective, the adoptive father of the youth and the deputy juvenile officer, all testified that the detective read the juvenile his rights and that the youth acknowledged he understood them, signed a waiver form and later confessed to the crime. The youth, however, testified that he signed the waiver while intoxicated[3] and in fear of physical intimidation by his adoptive father who was in the room at the time of the alleged waiver and interrogation. At the end of the suppression hearing the trial court overruled the appellant's motion, finding that the youth was informed of his rights and that he "freely, voluntarily and intelligently waived" them. Later, when the trial judge adjudicated the youth to be culpable of the act charged, he specifically read into the

record that he was excluding the confession and instead based his judgment on other evidence presented by the State. Because the trial court determination was not founded upon the allegedly involuntary confession, we need not address the issue of whether there was, in fact, a knowing and intelligent waiver by the youth of his *Miranda* rights.[4]

We next focus our inquiry onto the issue of whether there was sufficient evidence, excluding the confession by the youth, upon which to base an adjudication of stealing. The youth was adjudged a delinquent by reason of stealing under Section 560.156, RSMo. 1969; that is, he willfully took and carried away stereo equipment belonging to his adoptive father with the intention to permanently deprive the owner of the property. Evidence of this course of conduct was provided by the testimony of an eyewitness to the offense. Daniel Griffith testified that he was present and observed the youth punching in the screen door of the

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The youth claimed he was intoxicated and therefore incapable of knowingly and intelligently waiving his rights. As an aside we note, however, intoxication does not *per se* negate the ability of one in custody to waive his *Miranda* rights. Rather, the contention of intoxication is treated as a fact and so a determination is made of the weight and credibility of the evidence concerning intoxication and its effect on defendant. *State v. Wisdom*, 540 S.W.2d 94, 96 [1] (Mo.App.1976); *State v. Heather*, 498 S.W.2d 300, 305 [7] (Mo.App.1973).

**4.** In addition to intoxication as a reason why there was not an intelligent and knowing waiver of the youth's rights, an additional reason for convicting the court of error in denying the motion to suppress was alleged to be the impropriety of conducting a custodial interrogation of a juvenile in the absence of a friendly adult. In this case a police detective interrogated the youth with the adoptive father and a deputy juvenile officer present. Because the adoptive father was the victim of the crime and would testify for the State, the appellant argues that there was no friendly adult with the youth during the interrogation. Because we find that (a) the trial court excluded the youth's confession which was a result of the interrogation, (b) there was no evidence in the record to indicate that any other evidence was derived from the allegedly impermissible confession, and (c) there was sufficient evidence to support the

adjudication, a determination of whether there was an improper interrogation of the youth is not dispositive of the issue raised on appeal.

Nevertheless, appellant has raised a matter to which we are sensitive and justifies some comment. Chapter 211 of the Missouri Revised Statutes requires a person who has custody of the juvenile appear with the youth at the adjudication. In fact, failure to notify a parent or guardian to be present may result in a loss of jurisdiction of the juvenile court to proceed with the hearing. Section 211.101 (RSMo. 1978); *In Interest of W.W.M.*, 479 S.W.2d 446, 448 [1] (Mo. banc 1972). Beyond this, it has been determined that a waiver of constitutional rights may be invalid when a youth is questioned in the absence of a parent, attorney or "any other supportive adult." *State v. White*, 494 S.W.2d 687, 691 [7] (Mo.App.1973). More particularly, the court will look to the "totality of circumstances" which demand an examination of such factors: the mental age, health and education of the youth; his previous experience with such proceedings; and the presence of an adult who may truly be said to have the youth's best interests at heart.

In situations similar to the instant case where the child's adoptive father was, in fact, the victim of the crime, serious questions as to his ability to be supportive may be injected into the proceedings. We suggest this may necessitate the presence of an attorney or additional adult who can truly be "supportive" during the course of the interrogation.

victim's house, entering the house and carrying out stereo equipment. The equipment was then loaded into a car and taken to a shop and pawned, the eyewitness being with the youth during the whole of the occurrence. The youth's parents had previously had the locks on the house changed. After the taking, when they arrived home, they found the door broken open, with glass over the floor back of the screen door. In addition, the youth admitted to his adoptive father during a telephone conversation prior to the police interrogation that he took the equipment and pawned it.

Juvenile proceedings are normally considered equitable for procedural purposes. Section 211.171(6), RSMo.1978; *State ex rel. R. L. W. v. Billings,* 451 S.W.2d 125, 126 [2] (Mo. banc 1970). In such proceedings, however, due process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult. In re Winship, 397 U.S. 358 (1970). The record reflects the existence of such proof to support the judgment.

Related to this issue of evidence of culpability is the claim on appeal that all elements, the corpus delicti, of the offense were not proven. Specifically, appellant alleges error in the trial court finding that there was sufficient proof of the requisite intent to adjudicate him guilty of the offense of stealing. The testimony shows that the youth illegally took stereo equipment. But he claims that the pawning of the items and the retention of the pawn ticket showed a lack of an intent to permanently deprive his adoptive father of the stereo. He maintains he had merely pawned the items to obtain money and intended to buy back the items and return them at a later date.

" 'Intent' is the purpose or design with which an act is done." *State v. Harris,* 313 S.W.2d 664, 670 [5] (Mo.1958), and it is ". . . seldom subject to proof by use of direct evidence, and it usually must be inferred from the circumstances." *State v. Beckemeyer,* 423 S.W.2d 687, 688 [1] (Mo.

1968). *See also, State v. Poor,* 533 S.W.2d 245, 248 [5] (Mo.App.1976). The question of intent is an issue to be found by the factfinder, in this instance, the trial court. *State v. Everett,* 448 S.W.2d 873, 877 [3] (Mo.1970). There was competent evidence to justify the trial court finding that the youth intended to permanently deprive his foster father of the stereo equipment by taking it from the home and thereafter pawning the items. The act of breaking in the screen and the door, entering the house, removing the equipment from the house, placing it in the automobile and then pawning it are direct evidence of wrongfully taking possession of the property, asportation and converting it to one's own use. Under these circumstances intent to deprive the rightful owner of the property may be inferred by the trier of fact. *State v. Ahern,* 546 S.W.2d 20, 21 [2] (Mo.App.1976). The manner in which the property was taken is evidence of an intent to steal it. *State v. Sturgell,* 530 S.W.2d 737, 739 [2] (Mo.App. 1975). In addition to the manner in which the property was taken, testimony of Detective Uebinger established that Joe Griffith, the brother of Daniel Griffith, had accompanied the youth to the pawn shop, possessed the pawn ticket and had received half of the money. The juvenile then would have been unable to redeem the items had he so desired. From this it could be inferred that the youth had no intention of returning the items to his father. Furthermore, the act of pawning itself is an act of dominion over the property contrary to the rights of the lawful owner.

The next point of error concerns the dispositional determination that the youth be sent to the Missouri Division of Youth Services. It was contended that the juvenile office did not fully explore other alternatives and this commitment was not supported by the evidence. An investigation report of the juvenile officer was introduced in the evidence. The report traced the history of prior incidents involving the youth and included several "runaways" from home and an assault with a dangerous and deadly weapon. The services provided to the youth were also listed, which included residence at numerous psychiatric hospi-

tals and centers and attendance at public and private out-patient psychiatric services. Additionally, there had been several private placements at children's homes and the Mid-Missouri Mental Health Center. The last placement had been the residence at the home of the adoptive parents as an adopted son. The report also revealed, beyond the youth's inability to remain at these homes, a behavior pattern characterized by impulsivity, poor judgment, aggressiveness, truancy and alcohol abuse, with behavioral and academic problems in school. The report stated that available treatment alternatives were considered. These reported findings were buttressed on direct examination of the witness and in cross-examination.

The Division of Youth Services is responsible "for the prevention and control of juvenile delinquency and the rehabilitation of children." Section 219.016 (RSMo.Supp. 1975). Under authority of this section

". . . any child over twelve years of age may be committed to the custody of the division when the juvenile court determines a suitable community based treatment service does not exist, or has proven ineffective; and when the child is adjudicated pursuant to the provisions of paragraph (d) of subdivision (1) of section 211.031 RSMo, . . . ."

Section 219.021 (RSMo. 1975).

All requirements of this statutory provision were complied with. First, the youth fell within the jurisdiction of the juvenile court under Section 211.031(2). Second, the child was adjudicated to have stolen property from his father. Third, a juvenile officer testified that he had reviewed the available alternatives to placement in Youth Services. According to his testimony, family placement was not a viable alternative because his parents refused to allow the youth to return to their family unit. Placement at private agencies for counseling and residential care had been attempted in the past and had failed. Placement at a private foster or group home was deemed inappropriate because the juvenile officer felt that they lacked the structure which the youth needed. And an independent living arrangement was not considered a suitable alternative because the youth was not mature enough for this style of living.

■ The youth was adjudicated pursuant to Section 211.031 and the juvenile court could have reasonably found, based on the testimony of the juvenile officer, that no other suitable community based treatment service existed. The rationale for the recommendation of the youth to the Division of Youth Services was well grounded in fact and is in total compliance with the dispositional requirements of youth offenders under Section 219.021. The juvenile court clearly stated its finding that the "juvenile [was] in need of care and treatment which cannot be furnished by placing the juvenile in his own home, but which requires the care, custody and discipline of the Division of Youth Services."

■ Appellant's last point of appeal concerns his temporary detention in the St. Charles County jail after the juvenile court adjudicated the youth guilty of the offense of stealing and prior to his transfer to the Division of Youth Services. The youth was detained at the jail until the sheriff's office could provide for the transportation which was at most one night. Additionally, the jail had been designated a temporary detention facility for juveniles and separate quarters were provided for juveniles.

Appellant has failed to cite any statutory law which disallowed the court the right to place the juvenile in temporary detention. Section 211.061 cited by appellant directs any juvenile in custody to be delivered to the juvenile court or a juvenile officer. Section 211.411 cited by appellant merely directs law enforcement officials to cooperate with juvenile officers. Section 211.151 directs the juvenile court to ensure that if a youth, prior to the disposition of his case, is held in a jail or other facility for the detention of adults, that he be placed in "a room or ward entirely separate from adults confined therein. . . ." The record reveals the child was to be placed in a separate facility. Lastly, Section 219.071 states that "[n]o child committed to the division and awaiting transfer to the custody of the division . . . shall be transported or detained in association with criminals or

vicious and dissolute persons." Again, the record before the court does not reveal any such statutory violation. Bare assertions of the juvenile court's failure to follow legislative guidelines in the disposition and adjudication of a juvenile matter do not prove themselves. The court at all times appeared to consider the rights of the juvenile together with his best interest as well as the interest of society in the disposition of the case.

The judgment is affirmed.

STEWART, P. J., and SNYDER, J., concur.