[No. 38384.    Department Two.    March 31, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
FLETCHER ALVIS, *Appellant*.*

*Burns & Schneiderman* and *James D. Burns* (Appointed
counsel for appeal.), for appellant.

*Reported in 425 P.2d 924.

*Charles O. Carroll* and *John S. Ludwigson,* for respondent.

ARMSTRONG, J.†—In 1963 appellant Charles Alvis was tried and convicted of assault in the second degree. At that time he was given a 2 year deferral of sentence. Shortly before the 2 year period was up he attempted suicide; the deferred sentence was revoked, and he was committed to the Washington Corrections Center. At this point the appellant appeals from the original trial and conviction.

The evidence as given at the trial disclosed that appellant, while stationed in the Navy at Puget Sound Naval Shipyard, became psychologically upset due to job pressures and money problems. Following an abortive suicide attempt he was admitted to the naval hospital in Bremerton. On the Sunday in question he was out of the hospital on a weekend pass. He, his wife, Fannie Alvis, and a friend of several months, Larry Stone, took an afternoon ferry to Seattle to visit with Mrs. Alvis' parents. Appellant was depressed throughout most of the day. In the course of the evening part of the family left to visit with Mrs. Alvis' aunt, appellant included, but he dropped out of the group prior to their achieving their destination and returned to the house, where his 12-year-old brother-in-law, John Mitchell, was alone, watching television. Testimony as to events from this point on is somewhat confused, but it was possible for the jury to find that appellant secured his father-in-law's shotgun, asked young John where he might find shells for it, and eventually found some ammunition while rummaging in a trunk in an upstairs bedroom. At or about this time he also asked the boy to telephone Fannie to tell her to come home. She refused to heed the summons at first, but eventually started out, accompanied by Larry Stone. The appellant, carrying the loaded shotgun, went out onto the front porch. Mrs. Alvis and her escort arrived in front of the house and started up the walk. On seeing

---

†Judge Armstrong is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

that the appellant was armed with a gun and apparently pointing it at Mrs. Alvis, Stone shoved her aside and started toward the appellant. Whether he ever reached him or not is in question, but in any event, the weapon discharged, wounding Stone in the leg. Mrs. Alvis was not hit or harmed physically in any way. The appellant made every effort to aid his injured friend, and it was in this state that the police officers found them.

The defendant was charged with two counts of assault in the second degree. He entered pleas of not guilty to both counts. After a trial on the merits the jury acquitted him of assaulting Larry Stone, but convicted him of assaulting his wife.

The first assignment of error asserts that the evidence did not establish beyond a reasonable doubt that the appellant assaulted his wife. The contention is that evidence as to the apprehension in the mind of the victim was insufficient to support the conviction.

The statute upon which the charges were made is RCW 9.11.020, which reads in part:

> Every person who, under circumstances not amounting to assault in the first degree—
>
> . . . .
>
> (4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm;
>
> . . . .
>
> . . . .
>
> Shall be guilty of assault in the second degree
>
> . . . .

In *State v. Rush,* 14 Wn.2d 138, 139, 127 P.2d 411 (1942), we said:

> We are committed to the rule that an assault is an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented. Within this definition, one would be guilty of assault, if he raised his hand in anger with an apparent purpose to strike and sufficiently near to enable the purpose to be carried into effect. *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn. (2d) 485, 125 P. (2d) 681. Whether there has

been an assault in a particular case, depends more on the apprehension created in the mind of the person assaulted than upon the undisclosed intention of the person committing the assault.

The wife, unfortunately, was not present at the trial, so the jury was deprived of the benefit of her thoughts at the time of the event, but, in addition to the facts as detailed above, there was evidence that the appellant had in the past quarreled with his wife, and on at least one occasion struck her on the arm (although on the witness stand he denied any memory of the occurrence). It would be reasonable for the jury to infer that due to the past history between the two of them, the wife would be apprehensive of further bodily harm on seeing her husband brandishing a gun, pointed at her. In considering her state of mind the jury could also consider that Larry Stone was in the same general physical position as Mrs. Alvis at the time of the shooting. Stone testified that "the gun was pointed at her and I had the impression he was going to shoot so I pushed her aside." In the light of the past history of the parties, and the testimony of the best witness available in the absence of the victim herself, the evidence must be considered sufficient to support a conviction.

The second assignment of error challenges the admissibility of a statement given by the appellant shortly after the assault, while he was in custody. The shooting occurred at approximately 8:30 p.m. on the night of February 10, 1963. Within a very short time the appellant was in police custody. At approximately 9:30 p.m. of the same evening two detectives from the Seattle Police Department interrogated him at the city jail. The session lasted approximately 30 to 40 minutes. In the course of the questioning, one of the officers wrote out a statement in longhand which the appellant signed. The circumstances under which the statement was given were explored at the pretrial hearing held pursuant to Rules of Pleading, Practice and Procedure 101.20W, with a finding by the trial court that it had been voluntarily given.

It is the contention of the appellant that the statement is not admissible for two reasons; first, that he was not in possession of his mental faculties at the time the statement was given to the officers; and second, that even though the police did advise him of his right to an attorney prior to his signing of the statement, that such advice did not come until after he had made damaging admissions to the officers which were incorporated into the statement.

■ We do not feel that the first part of the assignment has merit. In *State v. Allen*, 67 Wn.2d 238, 242, 406 P.2d 950 (1965), we said:

> Turning now from witnesses to the field of confessions, we conclude that the rule should be the same and that, in the absence of an adjudication of insanity or incompetency, and in the absence of any action by the state or its officers which could be said to make a confession involuntary, a confession by a mentally ill defendant should be admissible with the defendant at liberty to introduce evidence of any circumstances that might affect its voluntariness or its probative value.

In the instant case there has been no adjudication of either insanity or mental incompetency, nor is there any showing of any actions on the part of the interrogating officers that might render the statement involuntary. At the most, on the behalf of the appellant, there has been a showing of a sufficient mental aberration to justify treatment by a hospital staff to enable the appellant to cope with the pressures of the world around him. This evidence would not in itself justify this court in finding the confession to be involuntary.

There is an allegation by the appellant that he was under the influence of drugs at the time, hence he was incapable of understanding what he was doing, yet nowhere in the record is there any evidence of what the drugs were, or what their effect might have been, save evidence given at the pretrial hearing that the appellant was taking tranquilizers given to him by the hospital to enable him to satisfactorily get through the weekend at home. There is no evidence that these tranquilizers were more than the usual

nerve depressant, or that they in any way affected the intellectual processes of the appellant.

Neither do we feel that the second half of the assignment carries any greater weight. The invalidity alleged is that the appellant had not been warned of his right to counsel prior to his having made several damaging remarks, although he freely admits to having been warned prior to his signing of the statement which was admitted against him at the trial. It should be noted at this point that the more recent formulations of the law on admissibility of confessions are not operative for a trial occurring in 1963. *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (1966).

The rule at that time, as it basically remains today, was one of voluntariness. In *State v. Darst*, 65 Wn.2d 808, 815, 399 P.2d 618 (1965), we said:

> The court found the confession to have been voluntarily made and not given in violation of defendant's constitutional right to counsel. Abundant evidence supports the trial court's conclusion and demonstrates that the court acted well within its discretion in admitting the confession in evidence. *State v. Hoffman*, 64 Wn. (2d) 445, 392 P. (2d) 237. The essential test is always, Was the confession voluntarily given? *Culombe v. Connecticut*, 367 U.S. 568, 6 L. Ed. (2d) 1037, 81 S. Ct. 1860.

See also *Haynes v. Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 Sup. Ct. 1336 (1963). From the record before us there is no doubt that the statement under attack was in fact freely and voluntarily given. The appellant did receive a warning of his right to counsel prior to his having signed the statement. The police did not testify as to facts which he might have given them outside those contained in the statement. Since the statement was voluntary, and the police did warn him of his right to counsel before he signed the statement, we see no constitutional objection to its admission.

The last assignment of error runs to the giving of two allegedly erroneous and misleading instructions. The first of these reads:

An assault is an attempt to use force unlawfully or inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented. There must be some power, actual, or apparent, of doing bodily harm, but apparent power is sufficient, *and one who menacingly points at another an apparently loaded gun commits an assault* with a weapon likely to produce bodily harm, even though actually the gun was not loaded or not fired, or, if fired, was not aimed at the person assaulted at the actual time of firing. (Italics ours.)

The alleged error is that the italicized portion of the instruction constitutes a comment on the evidence barred by Const. art, 4 § 16, in that it fails to include the element of intent. The appellant freely concedes that the instruction is otherwise a correct statement of the law.

An instruction, to fall under the onus of the constitutional prohibition cited above, must convey or indicate to the jury a personal opinion or view of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial. *State v. Clayton,* 32 Wn.2d 571, 202 P.2d 922 (1949). Solely because the trial judge did not include an essential element of the charged crime within one instruction is not sufficient reason to strike it down as an unconstitutional comment. Nowhere is it alleged that the attacked instruction purports to include all elements of the crime, nor do we view it as such.

Each instruction must be considered in the light of all the instructions given. *State v. Willis,* 67 Wn.2d 681, 409 P.2d 669 (1966). The particular element purportedly omitted from the instant instruction, that of the criminal intent necessary to convict, was clearly and adequately covered in the instruction immediately following the one in question. We must presume that the jury viewed the instructions as a whole and considered the element of intent in their deliberations.

The other instruction under attack informed the jury of the presumption which the law raises that every man intends the natural and probable consequences of his

own acts. The contention is that only one presumption should be allowed in a criminal case, that of the innocence of the accused. This contention was met in *State v. Mays,* 65 Wn.2d 58, 395 P.2d 758 (1964). Our court held that this language merely reflects the idea of personal responsibility upon which our society is founded and does not interfere with the traditional presumption of innocence, nor does it assert a fact which would require evidence to overcome. We said at 68:

> When we say that the law *presumes* that every sane person intends the natural, ordinary and usual consequences of his acts, as set forth in instruction 15, it is but another way of asserting that the law so deems it; and it is one way of declaring the rule of personal responsibility by which all members of a civilized society must be bound.

Finding no reversible error in the trial court, the judgment is affirmed.

FINLEY, C. J., DONWORTH, OTT and HUNTER, JJ., concur.