**STATE of Missouri, Plaintiff-Respondent,**

v.

**Larry THOMAS, Defendant-Appellant.**

**No. 35486.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Feb. 11, 1975.

Motion for Rehearing or Transfer Denied
April 14, 1975.

As Corrected May 27, 1975.

Charles D. Kitchin, Public Defender, James C. Jones, John H. Marshall, Walter H. Sheata, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Defendant was found guilty of murder in the first degree and of attempted robbery first degree by means of a dangerous and deadly weapon. In accordance with the provisions of the Second Offender Act he was sentenced to life imprisonment with respect to the murder first degree and to fifteen years on the charge of attempted robbery first degree, the terms to run consecutively. We affirm.

While defendant's sole allegation of error is couched in assumptions, fairly read he contends that the trial court erred in admitting his oral confession because he was confined to the hospital as a result of gunshot wounds and was receiving medication when the confession was obtained and he was thus unable to knowingly and understandably waive his constitutional rights.

The sufficiency of the evidence is not contested, therefore, a brief statement of the facts will suffice.

At approximately 6:15 P.M. on the 8th of November, 1972, Mentoe Vernell went to the Reid Auto Parts Store located at 4750 Martin Luther King Drive to pay his bill. The general manager, a clerk, and Vernell, a regular customer, were the only persons in the store. A short time later the accused and his companion, Fancell Johnson, entered the store. Johnson walked over to the general manager and inquired about auto parts. At this time the defendant announced a holdup. Vernell reached out for the accused who had a gun in his hand. The accused fired four or five shots point-blank at Vernell before Vernell, who was armed, reached into his pants pocket, pulled out a gun, and fired three shots striking defendant in the arm and leg. Defendant and Vernell fell wounded to the floor. The police, who arrived on the scene almost immediately, disarmed the defendant. The defendant and Vernell were then taken to the hospital. Vernell died of the gunshot wounds while enroute to the hospital.

Defendant's motion to suppress the confession was heard by the trial court outside the presence of the jury and overruled. Further evidence was adduced during the trial. Detective Cox went to the hospital the morning after the shooting and interviewed the defendant in the presence of his sister and a friend who were visiting. Upon being advised of his rights defendant refused to make a statement concerning the occurrence. He did tell Detective Cox that he had recently been released from the

penitentiary and also gave him his present address.

The following day Detective Cox returned to the hospital with Detective Burgoon. They first stopped at the nurses' station to determine whether the defendant could be interviewed. Defendant was listed as in serious condition and was receiving medication for pain and infection. Upon receiving permission, they went to defendant's bedside. They passed the time of day with him and noted that he was "alert". Defendant was then read the Miranda rights by Detective Cox. Defendant advised Cox that he understood his constitutional rights. Detective Cox informed the defendant that the gun involved in the shooting was probably the same gun that had been used in a robbery earlier the same day. Defendant, at that time, advised the officers that he had not been involved in the earlier robbery but that he was involved in the robbery at Reid Auto Parts and made a full statement in which he told the officers that he obtained the weapon from his accomplice on the afternoon of November 8th, shortly before they went to the Reid Auto Parts store; that upon entry to the store he announced "stick-up"; that the deceased, Mr. Vernell, turned around and began to reach into his pocket, at which time the defendant shot him. There was no evidence of physical force, coercion, promises or threats used in obtaining the statement of the defendant.

The two detectives were the only persons who testified at the hearing. The court found that defendant had been properly advised of his rights under the ruling in Miranda [1] and that the confession was voluntary.

◼ Defendant was in custody at the time the confession was obtained, therefore, the State had the burden of proving that the confession was voluntary. State v. Williams, 369 S.W.2d 408 (Mo.Banc 1963). The State, however, is not required to negative every possible circumstance which if developed would present an issue of fact as to whether the confession was voluntary. State v. Nolan, 423 S.W.2d 815 (Mo.1968). There is no prohibition against a seriously wounded person confessing to the commission of a crime. State v. Granberry, 484 S.W.2d 295 (Mo.Banc 1972). The confessions of intoxicated persons have been admitted into evidence. State v. Smith, 342 S.W.2d 940 (Mo.1961); State v. Heather, 498 S.W.2d 300 (Mo.App.1973). It has also been held that the fact that medicines or drugs have been administered to one who confesses does not necessarily render the confession involuntary. State v. Alvis, 70 Wash.2d 969, 425 P.2d 924 (1967); People v. Harrison, 41 Cal.2d 216, 258 P.2d 1016 (1953). The ultimate question to be determined is whether the statement is the result of a rational intellect and a free will and thus voluntary. State v. Heather, *supra* [6]. The State carries its burden by a prima facie showing that the statement is voluntary. State v. Nolan, *supra* [9].

◼ The procedure in this State complies with the standards of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It provides an opportunity to fully explore the facts concerning the voluntariness of a confession outside the hearing of the jury. The defendant is free to bring in any evidence he desires to contradict the testimony of the law enforcement personnel, without prejudice to defendant in the trial on the issue of guilt. He is free to testify on his own behalf without waiving his privilege against self-incrimination.

◼ On the day before the confession was made defendant was in condition to receive visitors. His sister and a friend were at the hospital. He was sufficiently rational to understand his right to remain silent. In fact he exercised that right. On the following day the detectives obtained permission to interview the defendant from

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the nurse on duty, a tacit indication of his condition. The detectives found him to be alert and upon reading the standard Miranda warning ascertained that he understood his rights. Defendant presented no additional evidence. He did not testify as to his condition. He did not introduce the medical records which are peculiarly under his dominion. The facts surrounding the confession are uncontradicted. The trial court committed no error in admitting the confession.

The judgment is affirmed.

SMITH, C. J., and KELLY, JJ., concur.