[No. 5368–1. Division One. July 3, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. VERNON C. WEYGANDT, *Appellant.*

600

*McBee & Lewis* and *Alfred McBee,* for appellant (appointed counsel for appeal).

*Patrick R. McMullen, Prosecuting Attorney,* for respondent.

Dore, J.—Defendants Weygandt, Polanski and Davis were charged with the first–degree murder of Jamie L. Grimes. Davis subsequently turned state's evidence and was granted immunity. The jury convicted Weygandt and Polanski of second–degree murder. Defendant Weygandt alone appeals.

## Issues

Issue 1: Whether the State's actions, in cremating the hands of the deceased victim and destroying part of the cement floor in the back room of the Red Lion Tavern in making tests to discover blood, destroyed material evidence which violated Weygandt's constitutional rights and prevented him from having a fair trial?

ISSUE 2: Whether there was misconduct on the part of the prosecutor in his final argument which constituted prejudicial error?

ISSUE 3: Whether the trial court erred in prohibiting a layman from testifying that one of the State's key witnesses was under the influence of heroin at the time she observed certain events about which she later testified?

ISSUE 4: Whether the trial court erred in failing to allow defense counsel to cross-examine the State's witness Davis as to whether he had ever been convicted of a military crime?

## FACTS

On July 18, 1976, a partially decomposed body of a stocky Caucasian male was found in the Swinomish Slough. An autopsy was performed revealing four bullet wounds in the body. The hands of the decedent were severed and mailed to Q. L. Ferguson, a qualified fingerprint expert in Washington, D.C., who examined and compared the fingerprints with known fingerprints of Jamie L. Grimes and concluded they were the same. Ferguson made silicone molds of the decedent's hands and took photographs of the molds. The hands were then returned to the Skagit County Sheriff's Office where they were cremated prior to charges being filed against defendants.

The victim, the defendants and most of the witnesses were frequenters of the Red Lion Tavern located in Anacortes, Washington. Polanski was a 50 percent owner of the tavern.

One of the witnesses at trial, Smitha, was working as a bartender on July 2, 1976, at about 8 p.m. when Grimes and Davis became engaged in a fistfight. Police were called but no arrests were made. Later in the evening defendant Polanski told Smitha to bring over a few bottles of wine and Grimes, Polanski, Weygandt, Davis and a Mr. Steve Allen began drinking the wine and things calmed down. Defendant during this time period gave Grimes some "reds" (downers) and Grimes became nearly unconscious.

Later defendants Weygandt and Polanski ushered Grimes into the back room of the tavern. A short time later Davis and Smitha heard what sounded like gunshots. Davis testified that he went to the back room and saw Weygandt standing over Grimes' body, gun in hand. Grimes was on the floor and appeared dead and Polanski was in the chair next to the desk. Davis returned from the back room telling Smitha that the noise was firecrackers. Smitha testified that Weygandt and Polanski later returned to the tavern saying that they took Grimes out the back door so he wouldn't bother any of the customers.

Davis testified that Polanski and Weygandt later loaded Grimes' body into Polanski's automobile and threw the corpse into the Swinomish Slough. Davis stated that on the following day Weygandt described to him how he had shot Grimes three times in the chest and once in the head.

During the investigation criminalists examined portions of the decedent's body and determined that minute blood samples removed from the trunk of Polanski's car were the same type as Grimes'—type O. The cement floor of the back room of the Red Lion Tavern was examined and found to have blood on it, which corroborated Davis' testimony as to the situs of Grimes' killing. The process used by the criminalists in detecting the blood on the floor was such that the immediate area where the killing allegedly took place could not be retested by the same process to determine if blood was present.

Weygandt argues he has been denied due process of law by the destruction of the victim's hands and the cement floor from which blood tests were made. He contends that the victim's fingerprints were the only conclusive evidence which positively identified the deceased and when the hands were destroyed, he was thereby deprived of an opportunity to make an examination of the same type the prosecution conducted. He further argues that the tests conducted on the concrete floor rendered further testing impossible and amounted to the destruction of material

evidence, and that his murder conviction should be set aside. *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976).

In the alternative, defendant Weygandt claims he is entitled to a new trial for (1) alleged prosecutorial misconduct, (2) failure of the trial court to allow the witness Station to testify that the State's witness Smitha was under the influence of heroin on July 2, 1976, the day she observed certain events to which she testified, and (3) the failure of the trial court to permit cross–examination to show that Davis had been convicted of a military crime, which would impeach his credibility.

## DECISION

ISSUE 1: Destruction of evidence.

For *Wright* to be applicable, defendant must show (1) that the evidence in fact has been destroyed, and (2) that a reasonable possibility exists that the evidence destroyed would be material and favorable to the defendant.

The fingerprints from the hands which identified the decedent as Jamie Grimes were preserved in the form of silicone molds. At trial and even now these molds are available for the defense's inspection. To date such an inspection has never been requested. Defendant complains that the court and jury were favored only with reproductions by way of the silicone molds. However, the defendant at trial did not object nor question the qualifications of the expert who prepared the molds, or the method he employed in making them, nor the introduction into evidence of photographs of the fingerprints to identify the deceased as Jamie Grimes.

The tests conducted by the State on the cement floor of the back room of the Red Lion Tavern allowed the defense to perform similar tests on the same floor. The procedure used in testing the cement floor for blood was one which used a chemical whose reaction determined that blood had been on the floor even though it was not apparent to the naked eye. The chemical was placed on the floor's surface

in a uniform polka dot fashion. Although a small portion of the slab was destroyed and is unavailable for further testing (approximately 14 percent of the total area of the slab), the remainder of the slab (86 percent of the area) is available and can be tested in a like manner.

We conclude that the defendant has failed to show that any material evidence in fact has been destroyed in the subject case.

Even if we determined that the defendant had shown that evidence had been destroyed, defendant failed the second requirement of *Wright* to make a showing that a reasonable possibility exists that the evidence was favorable to the defense. In *Wright* the defendant made a showing that the evidence destroyed possessed a reasonable possibility that it was material or favorable by arguing that any one of three known individuals other than the defendant had an opportunity to commit the murder. Also, in *Wright,* the appellant enunciated nine areas where the existence of the evidence destroyed could possibly have been of assistance to the defense. *Wright* is not applicable to the subject case for we find no material evidence has been destroyed by the prosecution, nor do we find a reasonable possibility that such evidence was favorable to the defense.

ISSUE 2: Alleged misconduct of prosecutor.

Defendant Weygandt testified as follows:

Q [By Mr. McBee] And then you went out to the 19th Hole and had breakfast, as I understand it?
A Yes.

. . .

Q After you dropped Janet off at her house, where did you next go?
A We came to my house and Don dropped me and my wife off and we just stood there in the driveway saying goodnight and stuff and then he left.

The prosecuting attorney in his closing argument made the following remarks:

If, after going to the 19th Hole, Vern really got out of the car with his wife, where is his wife here to say that? That

is one little fact. All she had to say was, "We got out of the car and stayed there." Where is she?

The defendant contends that the prosecutor's remarks invited the jury to draw an adverse inference because of the failure of the defendant to call his wife as a witness and, since the wife's testimony was privileged under RCW 5.60-.060, the prosecutor's remarks were misconduct and prejudicial to defendant so as to constitute reversible error.

RCW 5.60.060(1) provides:

> *A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband;* nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage.

(Italics ours.)

 In the subject case defendant's objection to the prosecutor's remarks was made for the first time in defendant's brief filed in this court. Defendant failed to object to the prosecutor's comments during closing argument nor did he ask for a mistrial. He made no mention of these remarks in his post–trial motions and never at any time brought this matter to the attention of the trial court. The trial court did not review this issue. We will not do so on appeal. *Gooldy v. Golden Grain Trucking Co.,* 69 Wn.2d 610, 419 P.2d 582 (1966).

> Issue 3: The trial court did not err in failing to allow defense witness to testify that State's witness Smitha was under the influence of heroin when she observed the events she later testified to at trial.

The trial court held that the defense witness Station was not qualified as a medical expert, but permitted her to testify as to what she had personally observed of witness Smitha's appearance. Station testified that on July 2, she noticed Smitha's eyes were glassy and her pupils were small

(pinned) and she rubbed and scratched her face. Station further stated she had observed Smitha during the months of June, July and August of 1976 after she had injected heroin and she described Smitha's physical condition as substantially the same as described on July 2 ("the glassiness of her eyes, the pinning and the scratching"). The court did not allow Station to testify that in her opinion Smitha was under the influence of heroin on July 2, the evening of the killing.

The trial court has wide discretion in excluding opinion evidence and absent a showing of abuse, its discretion will not be disturbed on appeal. *Hill v. C. & E. Constr. Co., Inc.*, 59 Wn.2d 743, 370 P.2d 255 (1962). In the subject case Station's testimony established facts in evidence from which the jury could formulate their own opinion whether or not Smitha was under the influence of heroin on July 2. We cannot say that the trial court abused its discretion in failing to admit Station's opinion testimony. As it was stated in *Pearson v. Alaska Pac. S.S. Co.*, 51 Wash. 560, 565, 99 P. 753, 755 (1909):

> "When all relevant facts can be or have been introduced before the jury, and the latter are able to deduce a reasonable inference from them, no reason exists for receiving opinion evidence, and it is inadmissible.

We find no error in the trial court's exclusion of Station's opinion evidence.

Issue 4: It was not error for trial court to prohibit State's witness from being cross-examined regarding a military crime.

RCW 10.52.030 provides:

> Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony . . .

In the subject case the witness Davis, when specifically asked, denied ever being convicted of a crime. At that point

counsel was required to come forward and present a competent record of a prior conviction if, in fact, there was such a conviction. Instead counsel made an oral offer of proof that the witness Davis had been convicted of a military crime while serving in Viet Nam. Although counsel stated that he was referring to a record, there is nothing in the verbatim report of proceedings to identify what was being read as competent evidence of a prior military conviction nor did counsel identify what he was reading as a record of a conviction from a military court or any court for that matter.

■ In *State v. Paul,* 8 Wn. App. 666, 667, 508 P.2d 1033, 1034 (1973), it was stated:

In *Burgett v. Texas,* 389 U.S. 109, 114–15, 19 L. Ed. 2d 319, 324–25, 88 S. Ct. 258 (1967), Justice Douglas, speaking for the court, stated:

*Gideon v. Wainwright* [372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963)] established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. And that ruling was not limited to prospective applications. . . . Presuming waiver of counsel from a silent record is impermissible. . . . To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case.

The same rationale was used in *United States v. Tucker,* 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972).

In *Loper v. Beto,* 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (1972) a majority of the court held that the *Burgett* rule, as it emanated from *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963) was to be given retroactive application.

Hence, the rule now is that the use of prior convictions for the purpose of impeachment or enhancement of punishment shall not be allowed unless it shall appear upon the record that the defendant was afforded counsel at the prior hearing or, in fact, made a valid waiver of counsel.

608

As defense counsel failed to produce the military record of the witness' conviction of a crime, showing on its face that witness Davis was afforded counsel at such proceeding, the trial court correctly prohibited the defense from alluding to this alleged military conviction in testimony before the jury.

Judgment affirmed.

JAMES and CALLOW, JJ., concur.

Reconsideration denied October 25, 1978.

Review denied by Supreme Court March 16, 1979.