# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KATHY A. STEVENS, | ) | No. 70754-0-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | ) | |
| Respondent. | ) | FILED: July 14, 2014 |

APPELWICK, J. — Kathy Stevens appeals the Department's finding that her medical condition is not workplace related. At trial, the jury upheld the Department's finding. Stevens argues that this was due to an erroneous jury instruction. She further asserts that the jury's verdict was not supported by substantial evidence. As a result, she contends that she should have been granted a new trial. We affirm.

## FACTS

Kathy Stevens began working for JAMCO America in September 2006. JAMCO is an aerospace company. When Stevens started at JAMCO, she worked in building 2 assembling wire harnesses. In December 2008, she moved to building 3, where she did inventory control. Prior to moving to building 3, she did not have any respiratory problems.

In building 3, Stevens worked in the mezzanine, which was an open area. Directly below the mezzanine deck, other workers sanded panels for aircraft doors. The sanding created dust that traveled up to the mezzanine. The panels contained fiberglass, phenol, and formaldehyde. When Stevens was handling them, her skin would break out in hives and rashes.

In April 2009, Stevens began to experience nausea, headaches, and tightness in her chest. She also smelled a gas smell and her breathing was different. The symptoms would start roughly an hour after she got to work and last all day until she got home. They would subside once she showered and changed her clothing, but would worsen again when she returned to work.

Stevens went to see her family doctor, Dr. Susana Escobar. Dr. Escobar diagnosed Stevens as having occupational asthma and referred her to an allergy and environmental medicine doctor, Dr. Philip Ranheim. Dr. Ranheim also concluded that Stevens had occupational asthma.

On March 25, 2010, the Department sent an industrial hygienist to test the air quality at JAMCO. The hygienist monitored the air in building 3. He did not find contaminant levels above permissible exposure limits, and he observed that there was not a lot of dust in the air. Stevens was present on the day of the testing. She reported that there was no one sanding the door panels that day and that the dust level in the air was lower than normal.

Stevens initially received time-loss compensation from the Department of Labor and Industries (Department) for her medical leave. On November 29, 2010, Stevens was examined by the Department's medical expert, Dr. Robert Cox. Dr. Cox also reviewed the industrial hygienist's report. Dr. Cox attributed Stevens's asthma not to her workplace conditions but to her smoking habit. Stevens had been a smoker since 1991. When she started working at JAMCO, she was smoking three-quarters of a pack a day. By the end of February 2011, Stevens was smoking only two to four cigarettes a day.

The Department ordered Stevens to repay the compensation she received. Stevens appealed to the Board of Industrial Insurance Appeals (Board). The Board affirmed the Department's order, finding that Stevens' asthma was not an occupational disease. Stevens then appealed to Snohomish County Superior Court. Her trial began on January 28, 2012. The jury ultimately concluded that the Board was correct in deciding that Stevens's asthma was not an occupational disease. Stevens moved for a new trial, which the court denied.

Stevens appeals, arguing that the court improperly instructed the jury on proximate cause and that substantial evidence did not support the jury's verdict.

## DISCUSSION

### I. Proximate Cause Instruction

Stevens challenges the jury instruction on proximate cause and medical testimony (Instruction 15). She asserts that it misstated the burden of proof and confused the jury.[1]

This court reviews jury instructions de novo. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). Jury instructions are sufficient if they (1) allow both parties to argue their theory of the case; (2) are not misleading; and (3) when read as a whole, properly inform the trier of fact of the applicable law. Id. An erroneous instruction is grounds for reversal only if it prejudices a party. Id. If the instruction contains a clear misstatement of law, prejudice is presumed. Id. If the instruction is merely misleading, prejudice must be demonstrated. Id.

---

[1] The Department argues that Stevens did not properly preserve her objection to Instruction 15. We need not address this argument, because we find that Stevens's challenge fails.

## A. Misstatement of Law

Stevens contends that Instruction 15 was an improper statement of the law. This is so, she maintains, because it imposed a burden upon her to demonstrate that work conditions were the proximate cause of her medical condition, rather than simply a proximate cause.

"Proximate cause" is a "cause that directly produces an event and without which the event would not have occurred." BLACK'S LAW DICTIONARY 250 (9th ed. 2009). Where the parties assert that different elements were the cause of the plaintiff's injury, the court must instruct the jury that there can be more than one proximate cause. See Jonson v. Chicago, M., St. P., and P.R. Co., 24 Wn. App. 377, 379, 601 P.2d 951 (1979). Each jury instruction must be considered in light of all the instructions given. State v. Alvis, 70 Wn.2d 969, 975, 425 P.2d 924 (1967).

In Alvis, the appellant challenged the jury instruction defining "assault," because it failed to include the element of intent. Id. The court noted that the next instruction clearly and adequately covered the criminal intent necessary to convict. Id. Thus, viewing the instructions together, they correctly informed the jury of the relevant law. See id.

Stevens contests the language in Instruction 15 that read, "Ms. Stevens'[s] condition and the proximate cause of that condition must be established by medical testimony." (Emphasis added.) However, Instruction 12 further informed the jury:

> There may be one or more proximate causes of a condition. For a worker to be entitled to benefits under the Industrial Insurance Act, [Title 51 RCW,] the work conditions must be a proximate cause of the alleged condition for which benefits is [sic] being sought. The law does not require that the work conditions be the sole proximate cause of such condition.

4

Instruction 12 plainly stated that there can be more than one proximate cause and that Stevens was not required to show that her work conditions were the sole proximate cause of her injury. Thus, read together, the instructions correctly informed the jury. They did not misstate the law.

### B. Jury Confusion

Stevens further contends that Instruction 15 confused the jurors about the appropriate burden of proof for proximate cause. As support, she points to the jury's correspondence with the court about the meaning of proximate cause. Stevens also references the presiding juror's declaration, which states that the jury was unclear about the standard of proof.

> Instruction 15 read in full:
>
> Ms. Stevens'[s] condition and the proximate cause of that condition must be established by medical testimony.
>
> Medical testimony of this causal relationship must be in terms of medical probability, not medical possibility.
>
> Testimony as to possibility means testimony confined to words of speculation and conjecture. Medical testimony that an incident could cause, can cause, or probably could cause such a condition is not sufficient.

Instruction 12 defined a proximate cause as one that is "related to the condition in two ways: (1) the cause produced the condition in a direct sequence unbroken by any new, independent cause, and (2) the condition would not have happened in the absence of the cause."

During deliberations, the jury sent two questions to the court. First, it asked, "What is the layman's definition of 'proximate cause.' Struggling with understanding definition in Instruction 12. Can we look up the definition of proximate cause?" The court replied

that the jury could not look up the definition and must instead refer to its instructions. The jury next asked, "Does the workplace conditions [sic] need to be the 51% or majority cause of her asthma?" The court again replied that the jury needed to refer to its instructions.

After the trial, Stevens's counsel spoke with the presiding juror, who communicated the jury's confusion. The juror provided a declaration, which states:

> The Jury had a great deal of difficulty understanding the Jury Instruction on proximate cause as it related to medical cause. . . .
>
> . . . .
>
> . . . Specifically, we could not determine from a review of the Jury Instructions if Ms. Steven's [sic] work exposure had to be the main cause, the predominant cause, or just a cause of her asthma. . . .
>
> . . .Based on the votes and the discussions, if the Jury had been advised by the Court that Ms. Steven's [sic] work exposure only had to be one cause of her asthma, and not the predominant cause, the verdict would not have been rendered in favor of the state [sic].

As discussed above, Instructions 12 and 15 do not conflict. Nor does Instruction 15 modify Instruction 12's definition of proximate cause. It merely explains the type of proof required to establish proximate cause.

Stevens asks this court to rely on the jury's questions and the presiding juror's declaration to conclude that Instruction 15 was nonetheless confusing. But, jurors' individual or collective thought processes leading to a verdict cannot be used to attack that verdict. State v. Ng, 110 Wn.2d 32, 43, 750 P.2d 632 (1988). We cannot consider the jury's questions as support for the idea that the jurors were confused in arriving at their verdict. Id. at 43-44. Nor can we consider jurors' postverdict statements about matters that "inhere in the verdict." Id. at 44.

The trial court properly presented Instruction 15 to the jury.

II. <u>Sufficient Evidence</u>

Stevens asserts that the jury's verdict was not supported by substantial evidence. When we review the superior court's decision on an appeal from a Board order, our review is limited to examining the record to determine whether substantial evidence supports the decision. <u>City of Bellevue v. Raum</u>, 171 Wn. App. 124, 151, 286 P.3d 695 (2012), <u>review denied</u> 176 Wn.2d 1024, 301 P.3d 1047 (2013). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the declared premise. <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). Even if we are convinced that the verdict was wrong, we should not substitute our judgment for the jury's, so long as there was evidence which, if believed, would support the verdict. <u>Raum</u>, 171 Wn. App. at 151.

> [The court's] function is to review for sufficient or substantial evidence, taking the record in the light most favorable to the party who prevailed in superior court. We are not to reweigh or rebalance the competing testimony and inferences, or to apply anew the burden of persuasion, for doing that would abridge the right to trial by jury.

<u>Harrison Mem'l Hosp. v. Gagnon</u>, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002) (footnotes omitted).

Stevens acknowledges that the Department presented medical evidence through Dr. Cox's testimony. But, she attacks the basis of Dr. Cox's conclusions. She notes that Dr. Cox was unaware of the following facts: that the sanding ventilation system was not tested; that the industrial hygienist's report upon which Dr. Cox partially relied did not represent a typical work day's dust exposure; that her coworker had also complained of trouble breathing; and that Stevens worked in a particularly dusty area. As a result,

Stevens asserts that Dr. Cox's conclusion was unfounded and that he merely offered an opinion consistent with the Department's theory of the case.

Even if Stevens' observations of the flaws in Dr. Cox's testimony are accurate, they reflect concern over the weight the testimony should be given. It is the jury's job to weigh competing testimony, and here the jury found in favor of the Department. We do not accept Stevens' invitation to evaluate Dr. Cox's credibility anew. So long as there was sufficient evidence to support the jury's verdict, we are bound to affirm.

Dr. Cox concluded that Stevens had asthma, but believed that it was not work related. This conclusion was based on Stevens' smoking history, Dr. Cox's years of pulmonary experience, and the industrial hygienist's report. Stevens' smoking habit was firmly established at trial. Although Stevens worked to reduce her cigarette intake once her symptoms began, she had smoked heavily for 20 years. Dr. Cox explained how smoking damages the lungs and can lead to symptoms like Stevens described. Dr. Cox further drew doubts about Stevens's report of her symptoms: he found it inconsistent that she could smoke heavily but be very sensitive to that workplace and that her symptoms had not abated since she ceased working in building 3. Dr. Cox also noted that the industrial hygienist's report showed that contaminant levels were below permissible exposure limits. This testimony, if believed, could support a finding that Stevens' asthma was not workplace related. While the record contained conflicting opinions from other doctors, it was the jury's job to decide which medical testimony to believe.

We find that substantial evidence supports the jury's verdict.

8

III. Motion For New Trial

Stevens contends that the trial court improperly denied her motion for a new trial, because she was denied substantial justice. The trial court may grant a new trial in enumerated circumstances, including where substantial justice has not been done. CR 59(a)(9). Granting a new trial for lack of substantial justice should be rare in light of the other broad grounds that CR 59 provides. Lian v. Stalick, 106 Wn. App. 811, 825, 25 P.3d 467 (2001).

Stevens alleges that a new trial was warranted here due to the jury's confusion and the inadequate evidence to support the verdict. But, we find that the trial court properly instructed the jury and that there was sufficient evidence to support the verdict. The trial court did not err in denying Steven's motion for a new trial.

We affirm.

WE CONCUR: