IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46771-2-II |
| Respondent, | |
| v. | |
| NATHANIEL FOREST WILSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Nathaniel Wilson appeals his convictions of residential burglary and attempted residential burglary. He challenges the trial court's denial of his motion to suppress evidence arising from his contact with police and its failure to give his proposed jury instruction on eyewitness identification. We hold that the trial court (1) correctly concluded that Wilson's contact with the police was a social contact and therefore properly denied his motion to suppress, and (2) did not abuse its discretion in rejecting Wilson's proposed eyewitness jury instruction because it determined that the instruction improperly commented on the evidence. Accordingly, we affirm Wilson's convictions.

FACTS

On February 3, 2014, as Sarah Roney arrived home a man and woman walked out the front door of her house. When Roney confronted them, they said they were looking for a lost dog. Roney later discovered that some small electronic devices and a camcorder were missing.

On February 19, 2014, Stephanie Cameron heard a knock on her door and looked through the peep hole to see a man and a woman she did not recognize. She ignored the knocking, but a few moments later heard her back door open and a man yell "Steven" into her house. Report of

Proceedings (RP) at 118.  She yelled, "No" and the man left.  RP at 119.  She then ran out the

back door and caught up with the couple that had been at her door.  The man denied being at her

home, but after she challenged him he said he was looking for his lost dog.

On March 4, 2014, Marla Kentfield came home for lunch and found that someone had

broken out the back door, rummaged through her home, and taken jewelry and electronics.

Later that same day, Olympia police officer Bill Jordan observed a woman walking in the

middle of the road.  She was walking with Wilson, who was not obstructing traffic.  Jordan

stopped the woman to cite her for pedestrian interference.  Wilson interjected himself into the

conversation between Jordan and the woman.  Jordan asked Wilson his name, which he

provided.  Jordan called dispatch and asked for a records check, and learned that Wilson had an

outstanding warrant for his arrest.  After confirming the warrant, Jordan arrested Wilson.

Wilson provided a different version of these events.[1]  However, the trial court noted that

Wilson's testimony was inconsistent, and expressly concluded that Jordan's testimony was more

credible than Wilson's testimony.

After arresting Wilson, the police realized that he was a suspect in their burglary

investigations.  They then used his photograph in photomontages and showed them to Roney and

Cameron.  Roney identified Wilson, saying she was 100 percent certain that he was the man in

her home.  Cameron also identified Wilson as the man she had seen at her home.

On March 5, 2014, the police executed a search warrant at the residence where Wilson

and the woman lived.  They recovered property belonging to both Roney and Kentfield.

The State charged Wilson with two counts of residential burglary and one count of

attempted residential burglary.  Before trial, Wilson filed a motion to suppress the photomontage

---

[1] Among other things, Wilson testified that Jordan took his driver's license.

identifications. He argued that Jordan had unlawfully seized him and that the identifications were a product of that seizure. The trial court held a CrR 3.6 hearing and denied the suppression motion. The trial court concluded that Jordan had not seized Wilson, but instead had a social contact with him when he asked for his name.

At trial, Roney and Cameron positively identified Wilson as the man who had been at their homes. Wilson proposed a jury instruction on the uncertainty of eyewitness identification. The trial court declined to give the instruction, ruling that "the last sentence is a comment on the evidence when it says that a witness's level of confidence standing alone may not be an indication of the reliability of the identification." RP 146. The trial court also reasoned that its instructions allowed Wilson to argue his theory of the case because another instruction contained a paragraph instructing the jury on assessing witness credibility.

The jury found Wilson guilty of one count of residential burglary (Roney) and one count of attempted residential burglary (Cameron), and not guilty of one count of residential burglary (Kentfield). Wilson appeals his two convictions.

ANALYSIS

A. MOTION TO SUPPRESS

Wilson claims that the trial court erred in denying his motion to suppress evidence related to his contact with police because he was seized unlawfully without reasonable suspicion of criminal activity. We disagree.

1. Standard of Review

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law. *State v. Weller*, 185 Wn. App. 913, 922, 344 P.3d 695, *review denied*, 183

Wn. 2d 1010 (2015). But we treat those findings as verities when, as here, the defendant does not challenge them on appeal. *State v. Chacon Arreola*, 176 Wn.2d 284, 288, 290 P.3d 983 (2012). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Id.* at 291.

2. Legal Principles

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless seizures unless one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). If police unlawfully seize a person, the exclusionary rule requires suppression of any evidence obtained because of the seizure. *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009).

A seizure occurs when, considering all the circumstances, a person's freedom of movement is restrained and that person would not feel free to leave because of the officer's use of force or display of authority. *Id.* at 663. A nonexclusive list of police actions likely resulting in a seizure include (1) the threatening presence of several officers, (2) an officer's display of a weapon, (3) an officer physically touching the person, and (4) an officer's language or tone of voice indicating that compliance with his request is mandatory. *Id.* at 664. The defendant has the burden of proving that a seizure occurred. *Id.*

A "social contact" between a police officer and a person is not a seizure. *Id.* at 664-65. A social contact includes a police officer approaching a person on the street or in another public place, engaging that person in conversation, and even asking for identification. *Id.* at 665 (discussing *State v. Young*, 135 Wn.2d 498, 511, 957 P.2d 681 (1998).

Whether a seizure has occurred is a mixed question of law and fact. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852 (2010). What the police officer and the defendant said and did

are questions of fact, and the legal consequences that flow from those facts is a question of law. *Id.*

3. Seizure Analysis

The issue here is whether Jordan seized Wilson when he talked to Wilson and asked his name. Wilson challenges the trial court's finding of fact 8 that Jordan did not stop him and that he was free to leave when Jordan was talking with him. But Wilson does not assign error to any of the other findings of fact, so they are verities. Wilson also challenges the trial court's conclusion of law 3 that his conversation with Jordan involved a social contact. We hold that substantial evidence supports the trial court's factual findings and those findings support its conclusion that what occurred here was a social contact and not a seizure for several reasons.

First, Jordan did not stop Wilson. The trial court determined in finding of fact 8 that Jordan did not order Wilson to stop walking, and Jordan's testimony supports this finding. To the contrary, the trial court made an unchallenged finding that when Jordan stopped Wilson's companion, Wilson interjected himself into the conversation and argued with Jordan about whether she should get a citation for pedestrian interference.

Second, Jordan did not restrict Wilson's movements. The trial court determined in finding of fact 8 that Wilson was free to leave, and Jordan's testimony supports this finding. The trial court did not credit Wilson's testimony that Jordan demanded his driver's license or state identification, which would have prevented him from leaving. While Jordan did tell Wilson he could not smoke, Jordan testified that he told Wilson that the reason was officer safety.

Third, Jordan did not conduct any intrusive questioning. The trial court made an unchallenged finding that Jordan merely asked Wilson for his name. And Jordan was not

investigating Wilson with regard to any particular crime. At that point, Jordan did not know that Wilson was a burglary suspect.

Fourth, Washington cases generally hold that merely asking a person basic questions without engaging in more intrusive conduct does not constitute a seizure. *Harrington*, 167 Wn.2d at 660-61, 665-66 (asking defendant where he was going at 11:00 PM and related questions without blocking his path was not a seizure until another officer arrived and events escalated); *State v. Johnson*, 156 Wn. App. 82, 87-88, 92, 231 P.3d 225 (2010), *remanded*, 172 Wn.2d 1001 (2011)(asking passenger in a car parked illegally in a handicapped space for his name was not a seizure); *Bailey*, 154 Wn. App. at 298, 302 (asking defendant on a deserted street where he was going and for his identification was not a seizure).

Finding of fact 8, which is supported by substantial evidence, and other unchallenged findings show that there was nothing about Jordan's encounter with Wilson that would make him believe that he could not decline Jordan's request for his name or that he was not free to leave. Therefore, Wilson has not proved that Jordan seized him by asking his name and performing a records check.

We hold the trial court's findings of fact support the trial court's conclusion that the encounter between Jordan and Wilson constituted a social contact and not a seizure. Accordingly, the trial court properly denied Wilson's motion to suppress Roney's and Cameron's photomontage and in-court identifications.

B.  EYEWITNESS IDENTIFICATION JURY INSTRUCTION

Wilson argues that the trial court erred in refusing to give his proposed jury instruction on eyewitness identification. He claims that the trial court made an error of law when it determined

6

that the instruction was a comment on the evidence and that the trial court abused its discretion in categorically denying his proposed instruction when it had discretion to give it. We disagree.

We review jury instructions as a whole to see if the instructions properly inform the jury of the applicable law, are not misleading, and allow the parties to argue their theories of the case. *State v. Embry*, 171 Wn. App. 714, 756, 287 P.3d 648 (2012). We review the adequacy of jury instructions de novo. *Id*. We review a trial court's choice of jury instructions for an abuse of discretion. *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).

A trial court is not required to give a proposed instruction if the instruction does not properly state the law or the evidence does not support it. *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995). And "it is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory." *Hathaway*, 161 Wn. App. at 647.

Wilson proposed the following jury instruction on the uncertainty of eyewitness identification:

> Although nothing may appear more convincing than a witness's categorical identification of a perpetrator, you must critically analyze such testimony. Such identifications, even if made in good faith, may be mistaken. Therefore, when analyzing such testimony, be advised that a witness's level of confidence, standing alone, may not be an indication of the reliability of the identification.

Clerk's Papers (CP) at 51. He claims that the trial court had discretion to give this proposed instruction because the Supreme Court in *State v. Allen*, 176 Wn.2d 611, 624, 294 P.3d 679 (2013), had approved giving a similar instruction on cross-racial identification.

In *Allen*, the court held that a trial court may give a jury instruction on cross-racial identification, but that due process does not require such an instruction. *Id.* at 624-26. The court reasoned that it was uncertain whether such a cautionary instruction would solve the unreliability problems inherent in eyewitness identifications "any more than would cross-examination, expert

evidence, or arguments to the jury." *Id.* at 622  Therefore, it left the decision on whether to give such an instruction to the trial court's discretion. *Id.* at 626.[2]

Wilson also claims that the instruction he offered is similar to WPIC 6.52, a new pattern instruction on eyewitness identification testimony adopted in light of *Allen*.  That instruction provides:

> Eyewitness testimony has been received in this trial on the subject of the identity of the perpetrator of the crime charged. In determining the weight to be given to eyewitness identification testimony, in addition to the factors already given you for evaluating any witness's testimony, you may consider other factors that bear on the accuracy of the identification.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.52, (3d ed. Supp. 2014-15) (WPIC).  The pattern instruction then lists eight factors for the jury to consider. *Id.*

Unlike WPIC 6.52, Wilson's proposed instruction does not list the factors the jury can consider in evaluating eyewitness identification.  Instead, Wilson's proposed instruction suggests to the jury that eyewitness identifications are unreliable, stating that such identifications "may be mistaken" and that a witness's confidence "may not be an indication of the reliability of the identification."  CP 51.

The trial court ruled that Wilson's proposed instruction constituted a comment on the evidence.  Article IV, section 16 of the Washington Constitution prohibits judges from commenting on the evidence.  *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).  Instead, the court's instructions "shall declare the law." *Id.* (quoting CONST. art. IV, § 16).  This

---

[2] Only four justices signed the lead opinion in *Allen*.  176 Wn.2d at 632.  However, all nine justices believed that the trial court may give a cross-racial identification instruction.  The dispute was over whether it was appropriate under the facts of the case.  As Justice Wiggins noted in his dissent, "[E]very member of this court would support giving a cross-racial identification instruction in an appropriate case – but we differ on what constitutes an appropriate case." *Id.* at 635-36 (Wiggins, J., dissenting).

prohibition is designed "to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007).

Under *Allen*, the trial court had discretion on whether to give an eyewitness identification instruction. 176 Wn.2d at 626. Further, whether a trial court believes a proposed instruction constitutes a comment on the evidence is within the trial court's discretion. *See State v. O'Donnell*, 142 Wn. App. 314, 324, 174 P.3d 1205, 1211 (2007) (trial court has discretion in the particular wording of an instruction); *State v. Owen*, 24 Wn. App. 130, 134, 600 P.2d 625 (1979) (whether an instruction is a comment on the evidence depends on the facts and circumstances presented). Therefore, we hold that the trial court did not abuse its discretion in refusing to give an eyewitness identification instruction.[3]

Wilson claims the evidence at trial supported giving the instruction and he was entitled to the instruction because his theory of the case was that the identifications were faulty. However, the trial court's general instructions allowed Wilson to challenge the identifications. The trial court gave a standard instruction based on WPIC 1.02 stating that the jury was the sole judge of the credibility of witness and listing several factors the jury could consider in evaluating that testimony. Because this instruction allowed Wilson to argue his theory of the case, the trial court did not err in refusing to give a more specific instruction that may have commented on the evidence. *See Hathaway*, 161 Wn. App. at 647.

---

[3] Wilson argues that the trial court erred in categorically denying the eyewitness jury instruction rather than exercising its discretion under *Allen*. However, the record shows that the trial court refused to give the instruction because the instruction's particular language constituted a comment on the evidence.

We hold that the trial court properly exercised its discretion in refusing Wilson's proposed eyewitness identification instruction.

We affirm Wilson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
MELNICK, J.